# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| MICHELE M., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No. SA CV 18-01248-DFM <br><br> MEMORANDUM OPINION AND ORDER |

Michele M. ("Plaintiff") appeals from the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB").[1] The Commissioner's decision is reversed and this case is remanded.

## I. BACKGROUND

In 2010, an Administrative Law Judge ("ALJ") found that Plaintiff was entitled to DIB beginning on September 28, 2007. See Administrative Record ("AR") 163-71. A continuing disability review resulted in a determination that Plaintiff's disability had ceased due to medical improvement as of March 5,

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

2014. See AR 181-84. After that decision was affirmed on reconsideration, Plaintiff requested a hearing before an ALJ. See AR 222. A hearing was held on August 17, 2017, at which Plaintiff and an impartial vocational expert testified. See AR 139-60.

On October 3, 2017, the ALJ issued a written decision finding that Plaintiff's disability ended on March 5, 2014. See AR 72-88. The ALJ began by finding that Plaintiff had not engaged in substantial gainful activity since the period of disability began. See AR 77. The ALJ concluded that, since March 5, 2014, Plaintiff had the severe impairments of obesity, status post bilateral carpal tunnel release, status post right tarsal tunnel release, status post two-level anterior cervical discectomy and fusion, status post lumbar laminectomy and fusion, status post bilateral total knee replacements, bilateral elbow lateral epicondylitis, migraine headaches, general anxiety disorder, and major depressive disorder. See id. The ALJ determined that these impairments did not meet or medically equal a listing, and that medical improvement had occurred on March 5, 2014. See AR 77-78. Based on these impairments, the ALJ assessed that Plaintiff had the following residual functional capacity: occasionally lift and/or carry 10 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; postural limitations all occasional except no climbing ladders, ropes, or scaffolds; no unprotected heights or moving dangerous machinery; occasional reaching overhead and all other directions bilaterally; occasional handling, fingering, and feeling bilaterally; occasional pushing and pulling with the bilateral upper and lower extremities; and limited to simple, routine tasks with frequent interaction with coworkers, supervisors, and the general public. See AR 79. Based on the evidence, the ALJ found that Plaintiff could not perform past relevant work, but she could perform jobs existing in

the national economy, including usher (DOT 344.677.014) and counter clerk (DOT 249.366.010). See AR 88.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-7. This action followed. See Dkt. 1.

## II. DISCUSSION

The parties dispute whether the ALJ: (1) properly found that Plaintiff's condition had improved; (2) had an adequate basis for discounting Plaintiff's subjective symptom testimony; (3) properly considered the opinions of two examining physicians; and (4) considered the appropriate exertional level. See Dkt. 22, Joint Stipulation ("JS") at 2-3. In addition, Plaintiff argues that new evidence submitted to the Appeals Council warrants remand and the Social Security Administration's November 2018 award of benefits is new and material evidence warranting remand. See id.

The Court finds that the ALJ properly found medical improvement. However, the Court concludes that the ALJ erred in discounting Plaintiff's testimony; the Court also concludes that the ALJ did not properly consider the opinion of one of the examining physicians. Because the Court concludes that these issues require remand, the Court will not decide whether Plaintiff's remaining claims of error would independently warrant relief. Upon remand, the ALJ may wish to consider Plaintiff's other claims of error.

### A. Medical Improvement

Once a claimant is found disabled under the Social Security Act, a presumption of continuing disability arises. See Bellamy v. Sec'y of Health & Human Servs., 755 F.2d 1380, 1381 (9th Cir. 1985); see also Melena v. Berryhill, No. 17-1698, 2018 WL 3326681, at *2 (C.D. Cal. May 31, 2018). The Commissioner may not terminate benefits absent substantial evidence of sufficient medical improvement in a claimant's impairments. See 42 U.S.C.

3

§ 423(f). Although the claimant retains the burden of proof, the presumption of continuing disability shifts the burden of production to the Commissioner to produce evidence to meet or rebut the presumption. See Bellamy, 755 F.2d at 1381.

The Commissioner has established an eight-step sequential evaluation procedure for evaluating whether a claimant's disability continues. Under that procedure, the Commissioner must determine:

> (1) whether the claimant is currently engaging in substantial gainful activity, (2) if not, whether the disability continues because the claimant's impairments meet or equal the severity of a listed impairment, (3) whether there has been a medical improvement, (4) if there has been a medical improvement, whether it is related to the claimant's ability to work, (5) if there has been no medical improvement or if the medical improvement is not related to the claimant's ability to work, whether any exception to medical improvement applies, (6) if there is medical improvement and it is shown to be related to the claimant's ability to work, whether all of the claimant's current impairments in combination are severe, (7) if the current impairment or combination of impairments is severe, whether the claimant has the residual functional capacity to perform any of his past relevant work activity, and (8) if the claimant is unable to do work performed in the past, whether the claimant can perform other work.

Delph v. Astrue, 538 F.3d 940, 945-46 (8th Cir. 2008) (citing 20 C.F.R. § 404.1594(f)). Furthermore, "medical improvement" is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). "A determination

that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)." Id.

The ALJ identified the "comparison point decision," or CPD, as the October 27, 2010 decision finding Plaintiff was disabled. See AR 76. The CPD concluded that Plaintiff met Listing 1.04A, which requires:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). . . .

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.04. The CPD cited positive evidence of Plaintiff's cervical and lumbar spine disorders, evidence of radiculopathy, and her positive straight-leg raising test. See AR 171.

The ALJ concluded that Plaintiff did not meet or medically equal the severity of a listed impairment:

> After consideration of the evidence, detailed below, the undersigned concludes that the severity of the claimant's physical impairments, either singly or in combination, does not meet the specific criteria of sections 1.02 (major dysfunction of joints) or 1.04 (disorders of spine). No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listing of Impairments.

AR 77. The ALJ then concluded that "[m]edical improvement occurred on March 5, 2014." AR 79. The ALJ stated that "[t]he medical evidence supports

a finding that, by March 5, 2014, there had been a decrease in the medical severity of the impairments present at the time of the CPD as discussed below." Id.

The ALJ spent several pages evaluating the evidence relating to Plaintiff's spinal impairments. See AR 80-85. The ALJ expressly noted that Plaintiff had a negative straight-leg raising test in both the seated and supine positions at an orthopedic examination on February 8, 2014. See AR 80-81 (citing AR 947). The ALJ also noted that Plaintiff had a negative straight-leg raising test with no production of sciatic pain during a July 19, 2014 internal medicine evaluation. See AR 81 (citing AR 1056). Finally, the ALJ noted that straight-leg raising tests were negative, bilaterally, in both the seated and supine positions at an orthopedic examination on December 2, 2016. See AR 84 (citing AR 1238).

These findings are adequate to support the ALJ's conclusion that Plaintiff did not meet the criteria of Listing 1.04A, which requires positive straight-leg raising test results in both the sitting and supine positions. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria."). Moreover, it is not necessary that the ALJ state why a claimant failed to satisfy every different section of the listing of impairments. See Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding that ALJ's summary of medical evidence was "an adequate statement of the 'foundations on which the ultimate factual conclusions are based'"). These findings are also adequate to support the ALJ's conclusion that medical improvement had occurred. The fact that Plaintiff's February 2014 orthopedic examination no longer resulted in positive straight-leg raising test results would support the ALJ's determination that there was a decrease in the medical severity of Plaintiff's impairments.

Plaintiff faults the ALJ for not discussing how Plaintiff's condition had changed and improved. See JS at 5. But the ALJ's decision expressly notes Plaintiff's negative straight-leg raising tests in February 2014, July 2014, and December 2016. These negative tests were substantial evidence to support the ALJ's findings that Plaintiff no longer met the criteria of Listing 1.04A and that medical improvement had occurred.

Contrary to Plaintiff's arguments, the ALJ is not required to "refute" the prior ALJ's findings. The ALJ must explain what medical improvement, if any, has occurred. The Court acknowledges that the ALJ could have been clearer about what evidence supported the ALJ's conclusion that improvement had occurred by citing specifically to the negative straight-leg raising tests rather than simply stating "as discussed below." But where, as here, the ALJ's discussion of the medical evidence expressly references test results that contradict the basis for the CPD, the Court has little if any difficulty in understanding the basis for the ALJ's decision. See Gonzalez, 914 F.3d at 1201 ("The Secretary's four page 'evaluation of the evidence' is an adequate statement of the 'foundations on which the ultimate factual conclusions are based.'").

Accordingly, the ALJ's finding of medical improvement is supported by substantial evidence. This issue does not warrant remand.

**B.     Subjective Symptom Testimony**

The Court engages in a two-step analysis to review the ALJ's evaluation of a claimant's symptom testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of

her symptoms only by offering specific, clear and convincing reasons for doing so." Id. at 1014-15.

Plaintiff testified that she has neck, head, shoulders, hand, thumb, back, knee, and foot pain. See AR 143. She cannot sit for more than an hour and cannot walk on hard surfaces for more than about 30 minutes. See AR 143-44. She stated that she could lift a gallon of milk. See AR 144. She drives her son "a lot," including to and from school, golf practice, school activities, karate, and three different boy scout groups, but she cannot drive for more than an hour at a time. AR 144-45, 153. She can do "minimal" chores around the house. AR 145. She gets migraines about once a week that force her to lie down. See AR 145-46. She has trouble putting on nylons and cleaning her feet in the shower. See AR 151. She can use the computer for 30 minutes before needing a 20 minute break. See AR 152. Her colitis requires her to have immediate access to a restroom. See AR 154. She has fallen several times since 2015, including one time that she broke her nose and a bone spur in her hand. See AR 154.

In 2013, Plaintiff stated on a questionnaire that, on an average day, she drives her son to school, drives to her doctor's appointment, does a small load of laundry, sleeps for an hour, finishes the laundry, picks her son up, rests for thirty minutes, washes some dishes, and starts prepping the dinner that her husband later cooks. See AR 378. She stops by the grocery store about once a week to pick up things her husband has forgotten. See AR 379. She cleans the three bathrooms in their house, thirty minutes each on separate days, once a week, and dusts when she has the energy. See id. She helps in the garden for ten minute intervals. See id. In 2014, Plaintiff reported that she does "necessary" shopping and errands, reads detective novels, pays bills, and can go out alone. AR 1093.

The ALJ gave three reasons for discounting Plaintiff's subjective symptom testimony: (1) her allegations were inconsistent with the objective medical evidence; (2) her medical treatment generally and her use of medications specifically was inconsistent with her allegations; and (3) her daily activities were inconsistent with her allegations. See AR 84. The Court finds that the ALJ's second and third reasons for discounting Plaintiff's testimony were not supported by substantial evidence.

The ALJ stated that there were "significant gaps" in Plaintiff's history of treatment and "relatively infrequent trips to the doctor." AR 84. The record contradicts this finding. For well over a decade Plaintiff has consistently sought medical treatment for a variety of serious physical and mental impairments—some of which have needed her immediate attention more than her spinal pain, e.g., two total knee replacements in 2010 (see AR 81)—and she has consistently sought and pursued surgical and other treatment for her back and neck pain. The ALJ noted Plaintiff's limited medication usage, but he did not address Plaintiff's testimony that she could not afford certain treatment. See AR 150-51. Nor did the ALJ address indications in the record that she experienced side effects from certain narcotics. See AR 1178 (stating that she had nightmares from Oxycontin and so was reluctant to take it).

As for Plaintiff's daily activities, her testimony suggests that she helps her family where she can, not that she is capable of working full-time. The ALJ focused in particular on her driving. See AR 84-85. Her testimony that she cannot drive for more than an hour at a time is consistent with her testimony that she cannot sit for more than an hour at a time. Driving her son to and from school, as well as to several activities a week, is not inconsistent with being disabled. Moreover, the ALJ also failed to demonstrate that Plaintiff's limited activities would be transferable to the workplace. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.

1989) (noting that "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits," and "many home activities are not easily transferable to what may be the most grueling environment of the workplace, where it might be impossible to periodically rest or take medication").

Accordingly, the ALJ's remaining basis to reject Plaintiff's subjective symptom testimony was the finding that the objective medical evidence did not support Plaintiff's testimony. But the "lack of medical evidence cannot form the sole basis for discounting pain testimony." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). Remand is accordingly warranted on this issue.

**C.    Examining Physicians' Opinions**

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. § 404.1527(c). A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a nonexamining physician's. See Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014).

When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." Carmickle v. Comm'r, SSA, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). Where such an opinion is contradicted, the ALJ may reject it for "specific and legitimate reasons that are supported by substantial evidence in the record." Id. The ALJ can meet this burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate

explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other factors. See 20 C.F.R. § 404.1527(c).

Dr. Max H. Matos, an orthopedic surgeon, examined Plaintiff and concluded that she could return to part-time work with several additional restrictions. See AR 1200. The ALJ gave Dr. Matos's opinion "little weight" because it was "not consistent with the record as a whole, e.g., generally unremarkable physical examinations and stable/normal MRI/EMG/NCS findings as discussed above." AR 85.

Plaintiff argues that the ALJ's basis for discounting Dr. Matos's opinion was not specific and legitimate. See JS at 29-30. The Court agrees. Dr. Matos opined that Plaintiff's abilities were limited due to her general pain corroborated by imaging and her complaints, not due to what he found on physical examination. Thus, even assuming that Plaintiff's physical examinations were "unremarkable," this was not a clear and convincing reason to discount Dr. Matos's opinion. Moreover, Dr. Matos also stated in his opinion that imaging of Plaintiff's cervical and lumbar spine were far from normal. He wrote:

> [Plaintiff] has frequent tingling and numbness in both hands, mostly toward the thumb, suggesting a C6-C7 radiculopathy and this was confirmed on the EMG/NCV done on June 9, 2015. By my examination, there was a positive cervical compression test. . . . Based on my review of the MRIs done on June 22, 2015, there was significant disc degeneration at C6-C7. . . . There was a 3.75 mm posterior discussed/osteophyte, which on the axial views were touching the spinal cord. Based on this, the patient is a candidate for extension of the fusion to the C6-C7 level. . . . X-rays of the lumbar spine revealed a hyperlordotic spine with evidence of an L4-5 and L5-S1 posterior intrapedicular screw fixation and a

> 5.99 mm retrolisthesis of S1 on L5. The MRI of the lumbar spine, done on October 30, 2012, confirmed the retrolisthesis of S1 on L5; however, there was also evidence of spondylolisthesis of L4 and L5, which measured 6.38 mm. In my opinion, a new MRI of the lumbar spine . . . should be done to update the pathology on the patient.

AR 1198-99. On remand, the ALJ should re-evaluate Dr. Matos's opinion.

### D. **Remand Is Warranted**

The decision whether to remand for further proceedings is within this Court's discretion. See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See id. at 1179; Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). A remand is appropriate, however, where there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003); Garrison, 759 F.3d at 1021 (explaining that courts have "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."). Here, remand is appropriate for the ALJ re-evaluate Plaintiff's symptom testimony and Dr. Matos's opinion and conduct any other proceedings as warranted.

///
///
///
///

## III. CONCLUSION

The decision of the Social Security Commissioner is reversed and this case is remanded.

IT IS SO ORDERED.

Date: November 21, 2019

DOUGLAS F. McCORMICK
United States Magistrate Judge